IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TAIYUAN YUTONG XINGFEI TRADING CO., LTD. and ZHAOWEN CHENG,<br>Plaintiffs,<br>v.<br>SCHEDULE A DEFENDANTS,<br>Defendants. | Case No. 26-cv-1979 |

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

Plaintiffs TAIYUAN YUTONG XINGFEI TRADING CO., LTD. ("Taiyuan") and ZHAOWEN CHENG ("Cheng") (collectively, "Plaintiffs") hereby sue Defendants, the individuals and business entities identified on Schedule A (collectively, "Defendants"). Cheng owns United States Design Patent No. D1,090,122 S, titled "Reception Desk" (the "'122 Patent"), and Taiyuan is the exclusive licensee of the '122 Patent. Defendants have infringed, and continue to infringe, the '122 Patent by making, importing, offering for sale, and/or selling reception desks embodying designs that Plaintiffs allege are substantially the same as the patented design through online marketplace storefronts operating under the seller identities associated with Defendants (the "Defendant Merchant Storefronts"). In support of their claims, Plaintiffs allege as follows:

**NATURE OF ACTION**

1. Plaintiffs market and sell reception desks through e-commerce channels, including Amazon, that embody and practice the ornamental design protected by the ‘122 Patent.

2. Cheng is the owner of the ‘122 Patent, and Taiyuan is the exclusive licensee. The ‘122 Patent claims the ornamental design for a reception desk, as shown and described in Figures

1 through 9. The patent issued on August 26, 2025 and is valid, subsisting, and in full force and effect. A true and correct copy of the '122 Patent is attached as Exhibit 1. Below is a side-by-side comparison of figures of the '122 Patent showing different views of the claimed design and representative examples of Defendants' accused products:

| Figure No. | Figure | Example of Defendants' Product |
|---|---|---|
| Fig. 1 | U.S. Patent Aug. 26, 2025 Sheet 1 of 9 US D1,090,122 S  FIG. 1 |  |
| Fig. 3 | U.S. Patent Aug. 26, 2025 Sheet 3 of 9 US D1,090,122 S  FIG. 3 |  |

| **Figure No.** | **Figure** | **Example of Defendants' Product** |
|---|---|---|
| Fig. 4 | U.S. Patent Aug. 26, 2025 Sheet 4 of 9 US D1,090,122 S  FIG. 4 |  |
| Fig. 5 | U.S. Patent Aug. 26, 2025 Sheet 5 of 9 US D1,090,122 S  FIG. 5 |  |

| Figure No. | Figure | Example of Defendants' Product |
|---|---|---|
| Fig. 6 | U.S. Patent Aug. 26, 2025 Sheet 6 of 9 US D1,090,122 S  FIG. 6 |  |
| Fig. 7 | U.S. Patent Aug. 26, 2025 Sheet 7 of 9 US D1,090,122 S  FIG. 7 |  |

| Figure No. | Figure | Example of Defendants' Product |
|---|---|---|
| Fig. 8 | U.S. Patent Aug. 26, 2025 Sheet 8 of 9 US D1,090,122 S  FIG. 8 |  |

3. The representative accused products shown above are reception desks whose overall ornamental appearance Plaintiffs allege is substantially the same as the design claimed in the ‘122 Patent. The side-by-side presentation is intended to permit comparison of the patented design, as shown in the patent drawings, with the accused products as a whole.

**JURISDICTION AND VENUE**

4. The Accused Products are substantially identical to each other in all respects relevant to infringement of the ‘122 Patent.

5. This Court has original subject-matter jurisdiction over the claims in this action pursuant to the provisions of the Patent Act, 35 U.S.C. §§ 1 et seq., including §§ 171 and 271, and pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6. Personal jurisdiction over each Defendant satisfies constitutional due process because, upon information and belief, each Defendant has sold Accused Products that infringe the ‘122 Patent to consumers within Pennsylvania not affiliated in any way with Plaintiffs through the regular course of business, with the knowledge that Plaintiffs are harmed in

Pennsylvania as a result of its sales of infringing products to Pennsylvania residents. In addition, each Defendant has been willing to accept an order for an Accused Product from a representative of Plaintiffs with a Pennsylvania address, to ship the product to that representative in Pennsylvania, and to collect Pennsylvania sales tax. Plaintiffs' claims arise out of and relate to Defendants' offers to sell and sales of Accused Products that infringe the '122 Patent to Pennsylvania residents through the regular course of business.

7. Personal jurisdiction over each Defendant also satisfies constitutional due process because Defendants have intentionally directed the suit-related acts alleged herein, including their offers to sell and sales of the Accused Products, toward Pennsylvania, and those acts have caused harm that each Defendant should have anticipated would be suffered by Plaintiffs in Pennsylvania.

8. Personal jurisdiction over each Defendant satisfies the Pennsylvania long-arm statute, and therefore Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure. The Pennsylvania long-arm statute provides for jurisdiction "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa. Cons. Stat. § 5322(b). The Pennsylvania long-arm statute is, therefore, coextensive with the Due Process Clause.

9. Alternatively, to the extent that any Defendant is not subject to jurisdiction in any state's courts of general jurisdiction, this Court may exercise personal jurisdiction over that Defendant pursuant to Federal Rule of Civil Procedure 4(k)(2). Plaintiffs' patent infringement claims arise under federal law and, upon information and belief, each such Defendant has purposefully directed commercial activities toward and maintained sufficient contacts with the United States, including by operating online marketplace storefronts through which it offers to

sell and sells the Accused Products to consumers in the United States, such that the exercise of jurisdiction is consistent with the United States Constitution and laws.

10. Upon information and belief, Defendants have cooperated, communicated, shared information, and coordinated their efforts in order to create an infringing marketplace operating in parallel to the legitimate marketplace of Plaintiffs and third parties authorized to sell products embodying the design claimed in the ‘122 Patent, including employing and benefitting from substantially similar paid advertising, marketing, and advertising strategies (e.g., search engine optimization or “SEO”), in order to make their online storefronts appear more relevant and target consumers searching for products embodying the design claimed in the ‘122 Patent. By their actions, in addition to the damages associated with unauthorized use of Plaintiffs’ patented design, Defendants are causing concurrent and irreparable harm to Plaintiffs and the consuming public by: (1) reducing the online visibility of products embodying Plaintiffs’ patented design; (2) diluting and eroding the retail market price for products embodying Plaintiffs’ patented design; (3) causing overall degradation of the value of goodwill associated with Plaintiffs’ patented design; (4) devaluing the exclusivity that enhances the worth of Plaintiffs’ patented design and Plaintiffs’ reputation; and (5) increasing Plaintiffs’ overall cost to market their goods and educate consumers about Plaintiffs’ patented design.

11. Upon information and belief, Defendants are aware of Plaintiffs and the ‘122 Patent and are aware that their infringement is likely to cause harm to Plaintiffs in Pennsylvania.

12. Plaintiffs are suffering irreparable and indivisible injury and have suffered substantial damages as a result of Defendants’ unauthorized sale of the Accused Products in direct competition with Plaintiffs.

13. By virtue of the civil conspiracy claim in Count II of this Complaint, the Pennsylvania contacts of each Defendant are imputed to every other Defendant because, upon information and belief, each Defendant was aware of, or should have been aware of, the actions of the other co-conspirators.

14. By virtue of the civil conspiracy claim in Count II of this Complaint and the allegations of coordinated actions by Defendants, Plaintiffs' claims against Defendants arise out of the same series of transactions and occurrences relating to the offering for sale and sale of the Accused Products.

15. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(c)(3). Defendants do not reside in the United States and are subject to venue in any judicial district. Further, Defendants solicit business from this Judicial District and, upon information and belief, conduct and transact significant business in this Judicial District.

**INTRODUCTION**

16. Plaintiff Zhaowen Cheng ("Cheng") is the named inventor and owner of United States Design Patent No. D1,090,122 S, entitled "Reception Desk" (the "122 Patent"), which protects the ornamental design for a reception desk as shown and described in the patent drawings. Plaintiff Taiyuan Yutong Xingfei Trading Co., Ltd. ("Taiyuan") is the exclusive licensee of the '122 Patent and possesses exclusive rights relating to the commercialization and enforcement of the '122 Patent. Cheng invented and designed the ornamental design claimed in the '122 Patent, and Plaintiffs have developed, marketed, promoted, and sold reception desks embodying the patented design through e-commerce channels, including Amazon.

17. Plaintiffs filed this action to combat online infringers who trade upon Plaintiffs' rights, reputation, goodwill, and valuable patent by advertising, offering for sale, selling, importing, and/or distributing unauthorized reception desks that infringe the design claimed in the '122 Patent. Defendants are selling and/or offering for sale unauthorized products that copy, imitate, are based upon, or are derived from the ornamental design protected by the '122 Patent.

18. The '122 Patent was issued on August 26, 2025, and is valid, subsisting, and in full force and effect. A true and correct copy of the '122 Patent is attached hereto as Exhibit 1.

19. Upon information and belief, in an effort to profit from the ornamental design protected by Plaintiffs' '122 Patent, Defendants have created and/or operated numerous Defendant Merchant Storefronts through online marketplaces, including Amazon.com, through which Defendants advertise, offer for sale, sell, and/or distribute unauthorized reception desks embodying designs that are substantially the same as, copy, or colorably imitate the design claimed in the '122 Patent. Upon information and belief, Defendants have designed and operated the Defendant Merchant Storefronts in a manner intended to lend legitimacy to their unauthorized products and to reach consumers throughout the United States.

20. The Defendant Merchant Storefronts share common and recurring identifiers, including similarities in the design and appearance of the unauthorized products offered for sale, product configurations, listing presentations, advertising practices, and other marketplace characteristics. Upon information and belief, Defendants use aliases, seller identities, marketplace accounts, and other features of online commerce to conceal or obscure their identities and the full scope and interworking of their operations and to avoid enforcement of Plaintiffs' intellectual-property rights. Plaintiffs are forced to file this action to combat Defendants' infringement of the patented design. Plaintiffs have suffered, and continue to suffer,

irreparable harm due to the loss of control over the exclusivity and commercial exploitation of their valuable patented design, as well as damage to Plaintiffs' reputation, goodwill, licensing value, and ability to control the market for products embodying the patented design. Accordingly, Plaintiffs seek injunctive and monetary relief.

21. The rise of online retailing, coupled with the ability of sellers on e-commerce sites to create and operate multiple marketplace accounts, use aliases and seller identities, and move between storefronts, has made non-litigation policing of widespread online infringement increasingly difficult. Upon information and belief, merely employing marketplace takedown procedures against individual listings or storefronts would not provide Plaintiffs with complete or effective relief because infringing listings and storefronts can be replaced, recreated, or moved among marketplace accounts. The aggregated effect of such online infringement impairs Plaintiffs' ability to police and enforce their rights against the multiple Defendant Merchant Storefronts offering unauthorized products in competition with products embodying Plaintiffs' patented design.

22. Upon information and belief, the ability to offer unauthorized products at prices below those of legitimate products while absorbing manufacturing, advertising, fulfillment, and shipping costs is facilitated by economies of scale and coordinated activity throughout manufacturing, marketing, sales, distribution, and supply chains. The Department of Homeland Security has documented the manner in which illicit goods are distributed through modern e-commerce supply chains and has explained, among other things, that:

> Historically, many counterfeits were distributed through swap meets and individual sellers located on street corners. Today, counterfeits are being trafficked through vast e-commerce supply chains in concert with marketing, sales, and distribution networks. **The ability of e-commerce platforms to aggregate information and reduce transportation and search costs for consumers provides a big advantage over brick-and-mortar retailers. Because of this, sellers on digital platforms**

> **have consumer visibility well beyond the seller's natural geographical sales area.**
> ...
> Selling counterfeit and pirated goods through e-commerce is a highly profitable activity: production costs are low, millions of potential customers are available online, transactions are convenient, and listing on well-branded e-commerce platforms provides an air of legitimacy.
> ...
> The impact of counterfeit and pirated goods is broader than just unfair competition. Law enforcement officials have uncovered intricate links between the sale of counterfeit goods and transnational organized crime. **A study by the Better Business Bureau notes that the financial operations supporting counterfeit goods typically require central coordination,** making these activities attractive for organized crime, with groups such as the Mafia and the Japanese Yakuza heavily involved. Criminal organizations use coerced and child labor to manufacture and sell counterfeit goods. In some cases, the proceeds from counterfeit sales may be supporting terrorism and dictatorships throughout the world.

See Department of Homeland Security, Combating Trafficking in Counterfeit and Pirated Goods, Jan. 24, 2020, at 10, 19, attached hereto as Exhibit 2.

23. The Defendant Merchant Storefronts share common and recurring identifiers, including similarities in the design elements and appearance of the unauthorized reception desks offered for sale, which, together with the allegations of coordinated conduct set forth herein, establish a logical relationship among Defendants' activities and support Plaintiffs' allegation that Defendants' operations arise out of the same transaction, occurrence, or series of transactions or occurrences. Upon information and belief, Defendants use aliases, seller identities, marketplace accounts, and related techniques to avoid liability and to conceal or obscure both their identities and the full scope and interworking of their operations. The Department of Homeland Security has documented similar enforcement difficulties arising from the proliferation and replacement of third-party marketplace accounts:

> The scale of counterfeit activity online is evidenced as well by the significant efforts e-commerce platforms themselves have had to undertake. A major e-commerce platform reports that its proactive efforts prevented over 1 million suspected bad actors from publishing a single product for sale through its platform and blocked over 3 billion suspected counterfeit listings from being published to their

> marketplace. Despite efforts such as these, private sector actions have not been sufficient to prevent the importation and sale of a wide variety and large volume of counterfeit and pirated goods to the American public.
> ...
> A counterfeiter seeking to distribute fake products will typically set up one or more accounts on online third-party marketplaces. The ability to rapidly proliferate third-party online marketplaces greatly complicates enforcement efforts, especially for intellectual property rights holders. Rapid proliferation also allows counterfeiters to hop from one profile to the next even if the original site is taken down or blocked.
> ...
> Not only can counterfeiters set up their virtual storefronts quickly and easily, but they can also set up new virtual storefronts when their existing storefronts are shut down by either law enforcement or through voluntary initiatives set up by other stakeholders such as market platforms, advertisers, or payment processors.

See Combating Trafficking in Counterfeit and Pirated Goods (Exhibit 2), at 5, 11–12.

24. Plaintiffs have been and continue to be irreparably harmed through the loss of control over Plaintiffs' patented design, reputation, goodwill, licensing opportunities, and the quality and commercial presentation of products embodying or imitating Plaintiffs' patented design, as well as through the devaluation of the exclusivity associated with the '122 Patent. Plaintiffs have also suffered and continue to suffer price erosion, diversion of sales opportunities, impairment of licensing value, increased enforcement and marketing costs, and damage to the commercial value of Plaintiffs' patent rights. The Department of Homeland Security has further documented the substantial risks that the growth of e-commerce creates for intellectual-property owners:

> Counterfeiting is no longer confined to street-corners and flea markets. The problem has intensified to staggering levels, as shown by a recent Organization for Economic Cooperation and Development (OECD) report, which details a 154 percent increase in counterfeits traded internationally — from $200 billion in 2005 to $509 billion in 2016. Similar information collected by the U.S. Department of Homeland Security (DHS) between 2000 and 2018 shows that seizures of infringing goods at U.S. borders have increased 10-fold, from 3,244 seizures per year to 33,810.
> ...
> The rise in consumer use of third-party marketplaces significantly increases the risks and uncertainty for U.S. producers when creating new products. It is no longer enough for a small business to develop a product with significant local consumer demand and then use that revenue to grow the business regionally, nationally, and

> internationally with the brand protection efforts expanding in step. Instead, with the international scope of e-commerce platforms, once a small business exposes itself to the benefits of placing products online — which creates a geographic scope far greater than its more limited brand protection efforts can handle — it begins to face increased foreign infringement threat.
> ...
> Moreover, as costs to enter the online market have come down, such market entry is happening earlier and earlier in the product cycle, further enhancing risk. If a new product is a success, counterfeiters will attempt, often immediately, to outcompete the original seller with lower-cost counterfeit and pirated versions while avoiding the initial investment into research and design.
> ...
> Counterfeiters have taken full advantage of the aura of authenticity and trust that online platforms provide. While e-commerce has supported the launch of thousands of legitimate businesses, their models have also enabled counterfeiters to easily establish attractive "store-fronts" to compete with legitimate businesses.

See Combating Trafficking in Counterfeit and Pirated Goods (Exhibit 2), at 4, 8, 11.

25. The harms associated with widespread intellectual-property infringement through e-commerce are not limited to intellectual-property owners. The Department of Homeland Security has also documented broader harms to consumers, legitimate businesses, innovation, and the U.S. economy arising from illicit counterfeit and pirated goods sold through online marketplaces:

> The rapid growth of e-commerce has revolutionized the way goods are bought and sold, allowing for counterfeit and pirated goods to flood our borders and penetrate our communities and homes. Illicit goods trafficked to American consumers by e-commerce platforms and online third-party marketplaces threaten public health and safety, as well as national security. This illicit activity impacts American innovation and erodes the competitiveness of U.S. manufacturers and workers. The President's historic memorandum provides a much warranted and long overdue call to action in the U.S. Government's fight against a massive form of illicit trade that is inflicting significant harm on American consumers and businesses. <u>This illicit trade must be stopped in its tracks.</u>

See Combating Trafficking in Counterfeit and Pirated Goods (Exhibit 2), at 3–4 (underlining in original).

## THE PLAINTIFFS

26. Plaintiff TAIYUAN YUTONG XINGFEI TRADING CO., LTD. ("Taiyuan") is a company organized and existing under the laws of the People's Republic of China, with its principal place of business in Taiyuan City, Shanxi Province, China. Taiyuan is engaged in the manufacture, distribution, sale, marketing, promotion, and enforcement of products covered by or related to the '122 Patent, including reception desks marketed and sold through e-commerce channels, including Amazon.com and other online marketplaces.

27. Plaintiff ZHAOWEN CHENG ("Cheng") is the named inventor and record owner of United States Design Patent No. D1,090,122 S (the "122 Patent"), entitled "Reception Desk," which issued on August 26, 2025. The '122 Patent claims the ornamental design for a reception desk as shown and described in the patent drawings.

28. Effective August 30, 2025, Cheng granted Taiyuan an exclusive license under the '122 Patent. Pursuant to the Exclusive Patent License Agreement, Taiyuan possesses exclusive rights to make, have made, use, sell, offer for sale, import, export, distribute, advertise, market, and otherwise commercially exploit products covered by or related to the '122 Patent. The license is exclusive to Taiyuan, and Cheng may not grant any license, covenant, authorization, or permission under the licensed patent rights to any third party without Taiyuan's prior written consent. Cheng remains the record owner of the '122 Patent.

29. The Exclusive Patent License Agreement further grants Taiyuan the exclusive right to enforce the '122 Patent against actual, suspected, or threatened infringement. Taiyuan may initiate, control, prosecute, defend, settle, compromise, or dismiss infringement actions and other enforcement proceedings relating to the '122 Patent, and may bring such actions in its own name, in Cheng's name, or jointly with Cheng, as appropriate. Taiyuan also possesses the

contractual right to seek, collect, retain, and recover damages, profits, statutory damages, settlement proceeds, royalties, attorneys' fees, costs, and other monetary or equitable relief arising from infringement, including claims for past, present, and future infringement to the extent permitted by law. Cheng has agreed to cooperate in such enforcement proceedings and, if required, to be joined as a party.

30. Plaintiffs have expended substantial time, money, and other resources developing, marketing, advertising, promoting, distributing, and commercializing reception desks embodying the design claimed in the '122 Patent. Plaintiffs have also invested substantial time, money, and effort in developing consumer awareness, goodwill, and recognition in connection with Plaintiffs' patented design and products embodying that design. As a result of these efforts, products embodying the patented design that are marketed, distributed, or authorized by Plaintiffs have become associated by consumers, the public, and the trade with Plaintiffs and authorized sources of such products.

31. The commercial success and market recognition of products embodying Plaintiffs' patented design are due in substantial part to Plaintiffs' marketing, promotional, distribution, and commercialization efforts.

32. As a result of Plaintiffs' efforts, the quality of Plaintiffs' products, Plaintiffs' promotional and marketing activities, and related marketplace, media, and social-media exposure, members of the public have become familiar with products embodying the design claimed in the '122 Patent and associate authorized products embodying that design with Plaintiffs.

33. Plaintiffs have made substantial efforts to protect their interests in and to the '122 Patent and the patented design. No Defendant has been authorized by Plaintiffs to make, use, import into the United States, advertise, distribute, offer for sale, sell, or otherwise commercially

exploit any product embodying or colorably imitating the design claimed in the ‘122 Patent. No Defendant has received any license, authorization, consent, or permission from Plaintiffs to engage in the infringing conduct alleged herein.

34. Plaintiffs are engaged in the business of marketing, distributing, offering for sale, and selling reception desks and related products throughout the United States, including within Pennsylvania. Plaintiffs, either directly or indirectly, offer for sale and sell products embodying the patented design within the Commonwealth of Pennsylvania, including through the Internet and Amazon.com. Defendants, through the advertising, offering for sale, sale, importation, and distribution of unauthorized products embodying or colorably imitating Plaintiffs’ patented design, directly compete with Plaintiffs’ economic interests in the Commonwealth of Pennsylvania and cause Plaintiffs irreparable harm and damage within this jurisdiction.

35. Plaintiffs suffer ongoing, repeated, and sustained violations of the ‘122 Patent at the hands of infringers such as Defendants, who wrongfully make, import, advertise, offer for sale, sell, and distribute products embodying or colorably imitating Plaintiffs’ patented design. The natural and intended result of Defendants’ combined and parallel conduct is the erosion of the goodwill associated with Plaintiffs, Plaintiffs’ products, and the patented design, as well as the erosion of the legitimate market in which Plaintiffs operate. Defendants’ marketing and sales of the Accused Products in Pennsylvania directly and adversely affect Plaintiffs’ sales, commercial opportunities, licensing value, and profits in Pennsylvania.

## THE DEFENDANTS

36. Defendants are individuals and business entities who, upon information and belief, reside in the People’s Republic of China or other foreign jurisdictions or distribute goods from foreign jurisdictions. Defendants conduct business throughout the United States, including within

Pennsylvania and in this Judicial District, through the operation of fully interactive commercial websites and online marketplace storefronts, including Amazon.com, operating under the Defendant Merchant Storefronts. The Defendant Merchant Storefronts presently identified through Plaintiffs' investigation are the Amazon storefronts identified on Schedule A, together with their corresponding seller identification information and accused product listings. Each Defendant targets consumers in the United States, including Pennsylvania, and has offered to sell and, upon information and belief, has sold and continues to sell unauthorized reception desks embodying or colorably imitating the design claimed in the '122 Patent to consumers within the United States, including Pennsylvania and this Judicial District.

37. Defendants directly engage in infringement of the design claimed in the '122 Patent by advertising, offering for sale, and/or selling the Accused Products to consumers within Pennsylvania through e-commerce stores using, at least, the Defendant Merchant Storefronts, as well as additional e-commerce stores, marketplace accounts, seller identities, and/or aliases not yet known to Plaintiffs. Defendants have purposefully directed some portion of their unlawful activities toward consumers in the Commonwealth of Pennsylvania through the advertisement, offer for sale, sale, and/or shipment of Accused Products embodying or colorably imitating the patented design into Pennsylvania.

38. Defendants are using the design claimed in Plaintiffs' '122 Patent, and unauthorized copies or colorable imitations thereof, to drive Internet consumer traffic to their e-commerce stores operating under the Defendant Merchant Storefronts, thereby decreasing the size and value of Plaintiffs' legitimate Pennsylvania marketplace and impairing the value of Plaintiffs' rights in the '122 Patent.

**THE DEFENDANTS' UNLAWFUL CONDUCT**

39. The commercial success and market recognition of products embodying Plaintiffs' patented design have resulted in significant copying of the ornamental design protected by the '122 Patent. Plaintiffs have identified at least twelve fully interactive Amazon marketplace storefronts, together with corresponding seller profiles and accused product listings, through which Defendants advertise, offer for sale, sell, and/or distribute reception desks that Plaintiffs allege infringe the design claimed in the '122 Patent. Plaintiffs' investigation has preserved seller-profile information, accused product listings and images, checkout and shipping-availability information, and product-comparison evidence relating to the Defendant Merchant Storefronts.

40. Upon information and belief, Defendants facilitate sales by designing and operating the Defendant Merchant Storefronts so that they appear to unknowing consumers to be legitimate or authorized online retailers, outlet stores, or wholesalers offering authorized or legitimate versions of reception desks embodying Plaintiffs' patented design, when in fact Defendants have no license, authorization, or permission from Plaintiffs to make, import, advertise, distribute, offer for sale, or sell products embodying or colorably imitating the design claimed in the '122 Patent.

41. Upon information and belief, the Defendant Merchant Storefronts intentionally conceal or obscure Defendants' identities and the full scope and interworking of their infringing operations in an effort to deter Plaintiffs from learning Defendants' true identities and the exact nature and scope of their operations. Through their operation of the Defendant Merchant Storefronts, Defendants are directly and personally participating in, contributing to, inducing, facilitating, and engaging in the manufacture, importation, distribution, offering for sale, and sale of the Accused Products as alleged herein, often as partners, co-conspirators, and/or suppliers.

Upon information and belief, Defendants constitute an interrelated group of infringers working in active concert to knowingly and willfully manufacture, import, distribute, advertise, offer for sale, and sell Accused Products embodying or colorably imitating the design claimed in the '122 Patent.

42. Upon information and belief, at all times relevant hereto, Defendants have had knowledge of Cheng's ownership of the '122 Patent, Taiyuan's exclusive rights under the '122 Patent, Plaintiffs' exclusive rights to control the commercial exploitation and enforcement of the patented design, and the commercial value and goodwill associated with products embodying that design. Notwithstanding such knowledge, Defendants have continued to make, import, advertise, distribute, offer for sale, and/or sell the Accused Products without Plaintiffs' authorization.

43. Infringers operating through online marketplaces often go to great lengths to conceal their identities, including by using multiple aliases, fictitious names, addresses, seller identities, and marketplace accounts to register and operate networks of online storefronts. Upon information and belief, Defendants regularly create and/or operate new websites and online marketplace accounts on Amazon and other online marketplaces using the identities listed in Schedule A to the Complaint, as well as other aliases, fictitious names, seller identities, and addresses not yet known to Plaintiffs. Such registration and account-operation patterns are among the common tactics used by Defendants to conceal or obscure their identities and the full scope and interworking of their infringing operations and to avoid or frustrate enforcement efforts.

44. The Accused Products offered for sale through the Defendant Merchant Storefronts bear substantial similarities and indicia of being related to one another, including

similarities in their overall ornamental appearance, product configurations, listing images, marketing presentation, and other marketplace characteristics. Upon information and belief, these similarities indicate that the Accused Products were manufactured by, sourced from, distributed through, and/or otherwise connected to a common source or overlapping sources, and that Defendants are coordinating and working in concert to profit from Plaintiffs' rights in the '122 Patent.

45. In addition to operating under multiple names and seller identities, Defendants in this case and defendants in similar cases involving online infringement use a variety of common tactics to evade intellectual-property enforcement efforts. For example, infringers such as Defendants often register new online marketplace accounts under new aliases after receiving notice of enforcement proceedings or litigation and ship products in small quantities through international mail and express-shipping channels in order to reduce the likelihood of detection and interdiction by U.S. Customs and Border Protection ("CBP"). CBP's FY 2021 Intellectual Property Rights Seizure Statistics reported that U.S. retail e-commerce sales during the second quarter of 2021 were estimated at approximately $222.5 billion and accounted for approximately 13.3% of total retail sales. The report further states that, in FY 2021, CBP processed approximately 213 million express shipments and 94 million international mail shipments, and that nearly 90 percent of intellectual-property seizures occurred in the international mail and express environments. CBP further observed that the overwhelming volume of small packages makes its ability to identify and interdict high-risk packages difficult. See U.S. Customs and Border Protection, Intellectual Property Rights Seizure Statistics, FY 2021, at 23, 27, attached hereto as Exhibit 3.

46. Further, infringers such as Defendants typically operate multiple credit-card merchant accounts and third-party payment accounts, including accounts maintained through payment intermediaries such as PayPal, Inc. ("PayPal"), behind layers of payment gateways so that they can continue operations notwithstanding intellectual-property enforcement efforts. Upon information and belief, Defendants maintain foreign or offshore financial accounts and regularly transfer proceeds generated through their online marketplace operations to bank or other financial accounts outside the United States and outside the immediate reach of this Court. Analysis of transaction records in prior similar cases involving foreign online infringers has shown that such sellers regularly transfer proceeds from U.S.-based or U.S.-accessible payment accounts to foreign bank accounts, including accounts maintained in the People's Republic of China.

**COUNT I**

**DIRECT INFRINGEMENT OF U.S. DESIGN PATENT NO. D1,090,122 S**

47. Plaintiffs repeat and incorporate by reference herein the allegations contained in the preceding paragraphs of this Complaint as though fully set forth herein.

48. United States Design Patent No. D1,090,122 S (the " '122 Patent"), entitled "Reception Desk," claims the ornamental design for a reception desk as shown and described in the patent drawings. The '122 Patent is valid, subsisting, and in full force and effect. Plaintiff Zhaowen Cheng is the owner of the '122 Patent, and Plaintiff Taiyuan Yutong Xingfei Trading Co., Ltd. possesses the exclusive commercialization, enforcement, and recovery rights described above pursuant to the Exclusive Patent License Agreement.

49. Each Defendant has directly infringed, and upon information and belief continues to directly infringe, the '122 Patent by, without Plaintiffs' authorization, making, using,

importing into the United States, offering for sale, and/or selling within the United States Accused Products embodying the design claimed in the '122 Patent or a colorable imitation thereof, including through the Defendant Merchant Storefronts identified on Schedule A, in violation of 35 U.S.C. § 271(a). See Exhibit 4, side-by-side comparisons of the design claimed in the '122 Patent and representative Accused Products.

50. Defendants' Accused Products are reception desks and articles of manufacture to which designs embodying or colorably imitating the design claimed in the '122 Patent have been applied.

51. Under the ordinary-observer test applicable to design-patent infringement, the Accused Products embody designs that are substantially the same as the design claimed in the '122 Patent. In the eye of an ordinary observer familiar with the prior art and giving such attention as a purchaser usually gives, the overall ornamental appearance of each Accused Product and the claimed design is substantially the same, and the resemblance is such as to deceive an ordinary observer, inducing that observer to purchase one supposing it to be the other.

52. The infringement analysis is based on the overall visual impression created by the patented design as a whole, rather than isolated ornamental elements considered separately. The drawings of the '122 Patent, the images of the Accused Products, the side-by-side comparisons attached as Exhibit 4, and the Defendant-specific marketplace investigation materials demonstrate the substantial similarity between the claimed design and the Accused Products.

53. Pursuant to 35 U.S.C. § 287, Plaintiffs have complied with the marking provisions of the Patent Act. In any event, the filing of this action constitutes notice of infringement under 35 U.S.C. § 287(a), and Plaintiffs are entitled to recover all monetary relief available for infringement occurring during the period permitted by law.

54. Plaintiffs are entitled to recover damages adequate to compensate them for Defendants' infringement of the '122 Patent, but in no event less than a reasonable royalty, together with interest and costs, pursuant to 35 U.S.C. § 284.

55. Because the '122 Patent is a design patent, Plaintiffs are also entitled to pursue the additional remedy provided by 35 U.S.C. § 289. Defendants have, without license of the owner, applied the patented design or colorable imitations thereof to articles of manufacture for the purpose of sale and/or sold or exposed for sale articles of manufacture to which the patented design or colorable imitations thereof have been applied. Plaintiffs therefore seek recovery of Defendants' total profits attributable to the relevant articles of manufacture, but not less than the statutory minimum, to the full extent permitted by 35 U.S.C. § 289 and without double recovery of the same profits.

56. Upon information and belief, the foregoing acts of infringement constitute a collective enterprise involving shared and overlapping facts and have been willful, intentional, and undertaken in disregard of and with indifference to Plaintiffs' rights in the '122 Patent. Upon information and belief, Defendants knew of the '122 Patent and Plaintiffs' rights therein and nevertheless continued their infringing conduct. At minimum, any infringement continuing after Defendants receive actual notice of the '122 Patent and the infringement allegations asserted in this action is knowing and deliberate.

57. As a result of Defendants' infringement of Plaintiffs' exclusive patent rights, Plaintiffs are entitled to relief pursuant to 35 U.S.C. § 284, including enhanced damages to the extent warranted by Defendants' willful infringement, and to reasonable attorneys' fees and costs pursuant to 35 U.S.C. § 285 to the extent this case is determined to be exceptional.

58. Defendants' conduct is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiffs great and irreparable injury, including loss of exclusivity, erosion of market share and pricing, diversion of sales opportunities, impairment of licensing value, and damage to Plaintiffs' goodwill and commercial interests, which cannot be fully compensated or measured in money. Plaintiffs have no adequate remedy at law for such continuing harm. Pursuant to 35 U.S.C. § 283 and the applicable principles of equity, Plaintiffs are entitled to injunctive relief prohibiting Defendants from further infringing the '122 Patent, including by making, using, importing into the United States, offering for sale, or selling the Accused Products and products embodying designs not more than colorably different from the patented design.

**COUNT II**

**CIVIL CONSPIRACY**

59. Plaintiffs repeat, adopt, and incorporate by reference herein the allegations contained in the preceding paragraphs of this Complaint as though fully set forth herein.

60. This Court has supplemental jurisdiction over this claim pursuant to 28 U.S.C. § 1367(a) because Plaintiffs' civil-conspiracy claim arises from the same acts, transactions, occurrences, and operative facts underlying Plaintiffs' federal patent-infringement claim.

61. Upon information and belief, Defendants knowingly and voluntarily entered into a combination, scheme, and agreement to act in concert and to engage in unlawful acts and misconduct, including, without limitation, coordinated efforts relating to the sourcing, manufacture, importation, distribution, marketing, advertising, shipping, offering for sale, and sale of the Accused Products embodying or colorably imitating the design claimed in Plaintiffs' '122 Patent. Upon information and belief, the common scheme also included the use and

operation of multiple marketplace storefronts, seller identities, aliases, and related mechanisms to conceal or obscure Defendants' identities, the scope and interworking of their operations, and their coordinated activities, and to hinder or evade enforcement of Plaintiffs' rights.

62. The intent, purpose, and objective of the conspiracy and the underlying combination of unlawful acts and misconduct committed by Defendants were to injure Plaintiffs' lawful commercial and intellectual-property interests, interfere with Plaintiffs' exclusive rights in and to the '122 Patent, erode and divert Plaintiffs' legitimate market and sales opportunities, diminish the exclusivity and commercial value of Plaintiffs' patented design, and obtain unlawful profits through the unauthorized exploitation of Plaintiffs' intellectual property. Upon information and belief, Defendants acted with malice and an intent to injure Plaintiffs and without lawful justification. Any commercial gain sought by Defendants arose from the unauthorized exploitation of Plaintiffs' patented design rather than from the lawful exercise of Defendants' own rights.

63. Each Defendant understood and accepted the foregoing common scheme and agreed to perform its respective part to further accomplish the foregoing intent, purpose, and objective. In furtherance of the conspiracy, Defendants committed overt acts including, without limitation, operating and maintaining the Defendant Merchant Storefronts; advertising and listing the Accused Products; offering the Accused Products for sale to consumers in the United States, including consumers in Pennsylvania; accepting or being willing to accept orders for shipment into Pennsylvania; manufacturing, sourcing, importing, distributing, shipping, and/or selling the Accused Products; using multiple seller identities, aliases, and marketplace accounts; and concealing or obscuring the identities, relationships, and operations of the persons and entities participating in the scheme. By entering into and participating in the conspiracy, each Defendant

has knowingly, deliberately, willfully, and maliciously permitted, encouraged, assisted, and furthered the foregoing unlawful acts and misconduct.

64. As a direct and proximate result of the unlawful acts and misconduct undertaken by Defendants in furtherance of the conspiracy, Plaintiffs have sustained and continue to sustain actual legal damage, including loss of sales and commercial opportunities, erosion of market share and pricing, impairment of the exclusivity and licensing value of the ‘122 Patent, damage to Plaintiffs’ reputation and goodwill, increased enforcement and marketing costs, and other economic and irreparable harm. Unless Defendants are restrained and enjoined, Plaintiffs will continue to suffer immediate and irreparable harm for which there is no adequate remedy at law.

65. As a result of Defendants’ conspiracy and the acts committed in furtherance thereof, Plaintiffs are entitled to all relief available under applicable law, including compensatory damages, injunctive and other equitable relief, and exemplary or punitive damages for Defendants’ intentional and malicious misconduct. Plaintiffs further seek, to the extent permitted by law, restitution, disgorgement, or other monetary relief with respect to profits derived from Defendants’ unlawful conduct, provided that Plaintiffs shall not obtain duplicative recovery of amounts recoverable under Count I.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for judgment in their favor and against Defendants and request that the Court grant the following relief:

1) That Defendants, their affiliates, officers, agents, employees, attorneys, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

a. promoting, advertising, distributing, having manufactured, importing, offering for sale, and selling Defendants' Accused Products; and

b. using, linking to, transferring, selling, exercising control over, or otherwise owning the Defendant Merchant Storefronts, or any other online marketplace account that is being used to sell products or inventory not authorized by Plaintiffs which infringe the '122 Patent.

2) Entry of an Order that, upon Plaintiffs' request, those in privity with Defendants and those with notice of the injunction, including any online marketplaces, social media platforms, Facebook, YouTube, LinkedIn, Twitter, internet search engines such as Google, Bing, and Yahoo, and web hosts for the Defendant Merchant Storefronts, shall:

a. disable and cease providing services for any accounts through which Defendants engage in the sale of products not authorized by Plaintiffs which infringe the '122 Patent, including any accounts associated with the Defendants listed on Schedule A;

b. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of products that infringe the '122 Patent; and

c. take all steps necessary to prevent links to the Defendant accounts identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant accounts from any search index;

3) For judgment in favor of Plaintiffs against Defendants declaring that they have:

a. willfully infringed Plaintiffs' rights in the '122 Patent; and

b. otherwise injured the business reputation and business of Plaintiffs by Defendants' acts and conduct set forth in this Complaint;

4) For judgment in favor of Plaintiffs against Defendants for actual damages and enhanced damages pursuant to 35 U.S.C. § 284 in an amount to be determined at trial and, as

applicable to Plaintiffs' design-patent claim, Defendants' total profits pursuant to 35 U.S.C. § 289, without duplicative recovery, together with interest and costs as fixed by the Court;

5) That Plaintiffs be awarded Plaintiffs' reasonable attorneys' fees and costs;

6) That Plaintiffs be awarded punitive damages; and

7) Award any and all other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs respectfully demand a trial by jury on all issues so triable.

Dated: September 14, 2026

Respectfully submitted,

/s/ Zhihui (Julie) Guo
Zhihui (Julie) Guo
JS Law
200 East 36th Street, 16th Floor
New York, New York 10016
Telephone: (917) 250-7787
Email: sellersusip@gmail.com
NY Bar No. 4766705

Attorneys for Plaintiffs

**LIST OF EXHIBITS**

| | |
|---|---|
| Exhibit 1 | U.S. Design Patent No. D1,090,122 S, "Reception Desk" |
| Exhibit 2 | Department of Homeland Security, *Combating Trafficking in Counterfeit and Pirated Goods*, Jan. 24, 2020 (https://www.dhs.gov/publication/combating-trafficking-counterfeit-and-pirated-goods) |
| Exhibit 3 | U.S. Customs and Border Protection, *Intellectual Property Rights Seizure Statistics*, FY 2021 (https://www.cbp.gov/sites/default/files/assets/documents/2022-Sep/202994%20-%20FY%202021%20IPR%20Seizure%20Statistics%20BOOK.5%20-%20FINAL%20%28508%29.pdf) |
| Exhibit 4 | Side-by-side comparisons of the design claimed in the '122 Patent and representative Accused Products |

**Schedule "A"**

**Defendants with Store Name and Seller ID**

**[This page is the subject of Plaintiffs' Motion to File Under Seal. As such, this page has been redacted in accordance with L.R. 5.4(b)(1)]**